We will now hear argument in the second case of the day, which is Senn v. Smith. Mr. Jones, correct? Yes, Your Honor. Thank you. Very well. Can you hear me all right? Yes. Just fine. Thank you. All right. Please proceed. Thank you. Good morning, Your Honors. May it please the Court, my name is Andrew Jones. I am here on behalf of Defendant Appellant Kyle Smith in this matter. I'm going to endeavor to reserve three minutes. I will do my best to keep an eye on the clock. We'll try to help you. Thank you. This Court, as is familiar from the previous case in its review of the record, saw that this case arises from a protest at Portland City Hall after City Hall was closed for the day following a City Council meeting. My client and other members of the Multnomah County Sheriff's Office were summoned to help clear the building and secure the entrance to the building. My client used pepper spray after the Plaintiff Appellee, Linda Senn, grabbed the arm of another in these circumstances as depicted in the videos. Respectfully, the doctrine of qualified immunity protects my client from suit and immunizes him, in fact. Counsel, in looking at this issue, do you agree that we must take all the facts in the light most favorable to the Plaintiff? I do because we're on summary judgment and this is interlocutory. And so, if there is a dispute, you use the word grabbed and I've watched the video more than once and, you know, a jury could look at that and one way to view it is someone stumbling backwards down some stairs and steadying themselves for like maybe two seconds, not the individual. So if it is characterized in that way, if a jury were to find that, why isn't the decision of the district court denying qualified immunity proper? I think there's two reasons, Your Honor, Judge Graber. First is the controlling law of the Supreme Court and of this Court is that some equivalent action of that type, making contact with the officer under these circumstances, is not mere passive resistance. Well, we have cases like Matos in which the individual, you know, shoved the officer with two hands on their chest at close contact and we said, well, that's, you know, so what? You've been touched. That doesn't justify the use of pepper spray. So we certainly have cases in which touching of a much more egregious kind does not result in qualified immunity. Two points on that issue, going to Matos, Your Honor. Since Matos, this Court has talked about the necessity of the specific context in which the conduct or force was applied, I would submit that the context of a crowd, a loud and angry crowd, changes the circumstances from Matos, at least as to the situation facing the officer. But we also have cases that say that if a person, an individual, whoever is the plaintiff in the case, is themself not threatening, violent, has not committed a serious crime, that significant force can't be used against them. And we've also held that pepper spray is significant force. So you know, again, looking at the video, you know, this person has no weapon, is not moving toward the officer, but is moving backward. There's no serious crime, maybe trespassing, maybe disturbing the peace, something like that. We have cases that say that's not a serious crime. So you know, I'm not really sure why that doesn't suffice to say that qualified immunity does not apply here. I understand that, Your Honor. And I think, again, without the risk of repeating myself, given the unique challenges that my client faced at that instance, in a lot of the cases where the court has discussed what the individual is doing, they haven't had the challenges of responding to a crowd of this nature. And this court has recognized that there are challenges. But they didn't spray the crowd. They sprayed one person. And the alleged reason for it is she touched someone. Okay, so that's why I'm focusing on cases that deal with touching and pepper spray and when you can pepper spray someone, not the world. Because that wasn't the justification given, not as I understand it. Meaning the justification by the officer? Yes. The officer said he perceived this, and I realize it's objective at this point, Your Honor. That somebody was grabbing his colleague's arm. Correct. And he also gets some level of understanding that he's making this decision quickly in a challenging environment. Right. But he's not saying, well, I wouldn't have done this but for the fact that there were a lot of other people there, too, and people were raising their voices. He said, I did it because she touched him. And he said he perceived that to be a threat. Now, again, I understand it's not his subjective intention that controls. That's right. It's not. And looking at that video, why couldn't a jury come to the conclusion that I mentioned at the beginning that it was non-threatening, it was barely a touch, and a jury could find that it does not appear to be aggressive or threatening in nature? I also, well, I guess my answer, Your Honor, would be even if all that were true, I don't think that the existing precedent in 2016 told officers this type of behavior is passive. Well, let me say this, just somewhat along the lines of my colleague, but you would agree, I think, that pepper spray is considered an intermediate force, right? Absolutely. And it can only be used when there is a threat that is appropriate, correct? I think so, Your Honor. And in this case, Ms. Sen was not only not guilty of a minor crime, she wasn't charged with any crime. She was not. Okay. So in that situation, the only other element is the crowd. And my colleague, I don't know whether she's necessarily referring to Nelson, but Nelson makes it very clear that general disorder seen doesn't legitimize the use of significant force against non-threatening individuals. Now, whether that should be the ultimate result of the case is a different issue, but what we're struggling with, at least I am, is when you're in a summary judgment situation and the non-moving party gets the benefit of a doubt when there's a conflict. You've obviously got two different stories here. You've got the video, you've got both sides, and given the law that we just talked about, why wasn't the judge correct in this case that you can't award qualified immunity to the officer at this point? Well, this Court mentioned, or Your Honor mentioned Nelson. As I understood the facts of Nelson, the only justification was general disorder because the plaintiff in Nelson was 150 feet away on plaintiff's facts with, I believe, his hands up. There was no close proximity to any officer. So I think one of the issues was, if I understood this Court's opinion, was there is no way any officer, objective officer, could have perceived Mr. Nelson as either a threat or actively resisting. And to Your Honor's questions and points, I think, as you mentioned, an officer could have perceived the grab on the arm as threatening or resisting. And they could have perceived it as incidental, accidental, and not a threat, and not a grabbing. That's the problem. Whether you win in front of a jury is a different question. You may persuade them they might render a defense verdict in 20 minutes. But there's another way to view it, and in this procedural posture, we have to look at it not from your client's point of view, from an objective point of view, and from the other side's point of view. I understand, Your Honor. I also would just point out that you look at it from an objective view of what the officer would know. And also, whether it would be plainly incompetent to perceive a threat or active resistance in this scenario, I think, also is in the Court's position. Did Officer Smith make any mention of the fact that Bright Bill had an armed gun in his right hand? I don't think he makes any mention of it in his report or in the testimony on this record, Judge Bea. I'll just ask you, and this is kind of a sidecar, we've talked about how we construe the differences of view in a summary judgment, but the District Court made certain, if you will, findings. As a court of appeal, what standard of review do we apply in this situation to the determinations made by Judge Hernandez? You absolutely, Your Honor, will take the District Court's findings of fact, and construed in the light most favorable to Ms. Senn, of course. I think that the difference is, when the Court says a reasonable jury could conclude, this is in the judge's order at ER 11, Senn did not present an immediate threat, a reasonable jury could conclude Ms. Senn was engaged in no more than passive resistance. Okay. So, in taking that very point, does that, basically, are we essentially bound for purposes of construing how this gets disposed of, bound by what Judge Hernandez wrote there? Only to the extent he's finding issues of fact, and I would submit, I think, actually looking at the facts on the record, including the video and what Ms. Senn testified to, whether or not any of those facts fit within these legal concepts, like immediate threat or mere passive resistance, is my understanding. One thing that the District Court said that I wanted to ask you about is at ER 6, the parties agree that the video shows Breitbill, Senn, and Drost appear to lose their balance or stumble away from City Hall as they make contact. Is that true? Did you agree to that? We can agree that that's what the video shows, that they're both stumbling in that context. And they're stumbling away from City Hall and away from the police officers. So, you agree that's what the video shows? I agree they're both stumbling, and I agree in that video that it appears Ms. Senn, as my client testified to, and I think Ms. Senn said she couldn't recall, but the video shows she has a grab on an officer, and they're both being pulled down. It touches his hand. It's hard to see what exactly. And I don't want to argue facts with you. That's what we're struggling with. You've got what the district court found, you've got the presumption for the non-moving party, and it's the posture of the case that makes this so difficult. Even if we believe, if we were the officer, it all made perfectly good sense, we're still stuck with the case law, we're still stuck with the presumption about the law. And it appears that Judge Hernandez, and seemingly the facts in this case show, you've got two different views, both of which are reasonable, and somebody has to determine that, and on summary judgment, that's not us, is it? Isn't it the jury that's ultimately going to have to decide that? I'm running into my time. I just want to answer Your Honor's questions before. I would say yes with the caveat that this Court decides whether or not it was plainly incompetent for him to interpret that. So, I'll reserve the rest of your time, of course. All right. You say this, Akarn? Very well, please proceed, Mr. Akarn. Can Your Honors hear me? Yes. Very well, actually. Good morning, Your Honors, and may it please the Court. My name is Atul Acharya, and I represent the plaintiff and appellee in this case, Linda Senn. This case turns on a factual question. What did Deputy Kyle Smith see before he pepper-sprayed Ms. Senn in the face? Did he see that his colleague had just pushed her down the steps of City Hall and that she was in danger of falling, or not? It's a hard factual question. No, isn't the question whether he saw that his comrade was being grabbed by a protester by the armed? Wasn't that what he saw? I think that's undisputed that he saw that, Your Honor. All right. The disputed question is whether he saw a comrade. Now, the question is, these are armed police, at least Brightville was armed.  This is a crowd that shows some degree of anger. And what he sees is his comrade being grabbed, not the comrade grabbing her, but Ms. Senn grabbing the comrade by the arm. Can he come to his aid? Again, Your Honor, it depends on the context of what he saw. If he saw what happened before that, if he saw that his colleague had just pushed Ms. Senn. Does the record show that he observed that? Preserve that, Your Honor? It's part of the district court's findings on summary judgment. What the district court held was that Ms. Senn didn't reason, or that, sorry, that Deputy Smith, or no, that Ms. Senn didn't present a threat to Deputy Smith. I'm sorry, I don't think I got your answer to my question. Was there evidence that Mr. Smith, that Deputy Smith saw that Brightville pushed Senn? Yes, Your Honor. That evidence is in the video itself. If you watch the video, his head is turned in that direction the entire time. And did the district court so find? I don't think the district court so found. It's summary judgment, so the district court technically isn't really making findings as much as saying this is what a reasonable jury could find in looking at things in the plaintiff's favor. Yes, Your Honor, exactly. And what the district court found, and actually the written opinion is, you know, it says that Senn didn't present an immediate threat to Brightville or the other members of the RRT. Well, it seems to me that the point you raise, I'm trying to understand why you're raising it. And our cases are quite clear that, like Matos is clear, that defensive touching does not justify the use of pepper spray. And I understand your argument to be that if Ms. Senn was pushed and sort of trying to get her balance, that counts as defensive under our case law. And if it was just, you know, running up to an officer and grabbing at them, that would be contextually completely different under our case law.  Just so, Your Honor. And Matos is exactly the case that's on point. There, an officer was about to brush past the plaintiff to arrest her husband. It was quite similar. It wasn't a protest, but it was there were a lot of people there. It was chaotic. There was some hostility towards the police. And the officer was going to brush past the plaintiff and make an unwanted contact with her. And so she reached out and pushed the officer away. And what this Court held was that because that push was defensive and intended to protect her own body, and in response to the officer potentially coming into contact with her, that the officer couldn't reasonably have perceived that as a threat. And it's just the same here. If Deputy Smith saw that Ms. Senn had been pushed by his colleague and that she reached out briefly, inadvertently, and self-protectively to steady herself, and in fact that she had let go by the time he pepper sprayed her, if he saw all of that, then this force he used was excessive. And on summary judgment, what the district court held is that a reasonable jury could so find, that a reasonable jury could find that he saw all that and therefore that she didn't present a threat to him. And I think the district court said so in its written opinion, but it also said so on the record at the summary judgment hearing. What the judge said was that I can't conclude one way or the other what was in Deputy Smith's mind as to the Fourth Amendment claim, which is to say whether he did in fact reasonably perceive a threat or whether he didn't. So the judge is simply saying, given the presumptions here, somebody else, in this case the jury, has to decide that he can't decide it. Exactly so, Your Honor. Right. This is somewhat to the third-party issue that my colleague raised in an earlier case. What if somebody was standing next to Sen who never touched Officer Brightbill's arm and was pepper-sprayed in the crossfire? Would Officer Smith be entitled to qualified immunity in that case? As to the other person who was pepper-sprayed in the crossfire? Yeah. To be honest, Your Honor, I don't know the answer to that. Okay. But he did target Ms. Sen. You know that from the video because he pepper-sprayed her twice. The first time there was a crossfire and he hit both Ms. Drozd and Ms. Sen. And then he adjusted his aim a second time and got Ms. Sen in the face as she was retreating. And that especially is the kind of thing that a jury can take into account when it considers whether the force he used was excessive. And the perception of threat, whether an officer reasonably perceives a threat, is the kind of thing that goes to a jury. The Supreme Court said so in Tolan v. Cotton most recently in 2014 where there was a melee in front of a house and there was a young man who had been taken to the ground by the police. And then the police were making contact with his mother. And the young man rose to the ground and he said, with some vehemence, he said, get your effing hands, and he used the expletive, get your hands off my mom. And what the court said was that, yeah, a reasonable jury could perceive that as a threat. A reasonable jury could say that the officer perceived that as a threat, sure. But a reasonable jury could also say that a reasonable officer would have perceived that as a son's plea to stop an assault on his mother. And so resolving that genuine dispute in favor of the nonmoving party, the facts on which the summary judgment had to be determined were that the officer did perceive that as a son's plea to stop an assault on his mother. I also want to talk about the jurisdictional piece for a bit. Denial of summary judgment is an interlocutory order. It's ordinarily not appealable. There's an exception for qualified immunity, but on appeal, the appellate court is bound by the district court's findings of genuineness. And what the Supreme Court in Johnson v. Jones said is that the court of appeals should take as given the facts that the district court assumed when it denied summary judgment. And to your point, Judge Bail, when the district court leaves out, say, you know, a particular detail in a fact of finding or a finding of fact, because, you know, on summary judgment you don't make formal findings of fact, what the Supreme Court said in Johnson is that you have to take the facts that the district court likely assumed in denying summary judgment. So here the district court found that it was genuinely disputed whether Sen presented an immediate threat to Bright Bill or the other members of the RRT. He found that it was genuinely disputed what was in Deputy Smith's mind when he used pepper spray against Ms. Sen. And so the natural corollary of that is that it was the district court found that it was genuinely disputed whether he saw the full context which would determine whether her actions reasonably constituted a threat or not. And on appeal, this Court is bound by those findings of genuineness. It lacks jurisdiction to review whether a dispute of fact is genuine and instead must review only whether that dispute is material. And on that point, this Court's cases are clear. This Court's cases are clear that pepper spray is a serious use of force. It's designed to cause pain. It's a dangerous weapon under the sentencing guidelines. And it's intermediate force in the excessive force context. This Court's cases are also clear that the offenses with which she might have been charged, she wasn't charged with any, were minor crimes at most, interfering in disorderly conduct. And I don't think anyone can say from the video that she was attempting to flee.  And for the reasons just stated, the district court found that a reasonable jury could conclude that he couldn't reasonably have perceived a threat. And this Court is bound by that finding of genuineness and has to resolve it in favor of Ms. Sen for this interlocutory appeal. Just to go over the timeline for the cases, all of our cases that we cite are before October 2016 for the various pieces of the standard. The fact that pepper spray is intermediate force is from 2011. The fact that she was committing minor offenses at most is also from 2011, the Matos v. Aguirrano case. Protective contact, self-protective contact is not a threat. Again, Matos from 2011. And the full standard for which that we think should apply here, the full Fourth Amendment standard, is from the Young v. I think Connie v. Los Angeles case, also from 2011, that the use of substantial force without warning against an individual who is suspected only of minor offenses is not resisting arrest and, most important, does not pose any apparent threat to the officer of public safety is unreasonable. And just because it came up, I think, in the last argument, the Supreme Court has said that the qualified immunity standard has to be specific, can't be at a high level of generality. But that's a pretty granular level of generality. It's much more than most of the cases where the Supreme Court has said that are cases maybe on a memorandum disposition where they just state the Graham v. Conner factors and apply them without going into any more detail. Counsel, let me ask you this. I agree with you that the cases you cite say what you say, and I agree that there is a disputed view here. We're also counseled that we should not be doing, if you will, what the Supreme Court might do, in other words, anticipate what they're going to do. They've talked about it shouldn't be too high a level of generality. But in this case, what would be your response that this is, of course, no such thing? There's no such thing as? That this is not a high level of generality. It's specific. I think that's my position, Ron, that it is specific. Right. I'm sorry. I'm not sure I understand the question. Well, I would just try to get… Are the cases specific enough to have given an officer notice without question that if she was, you know, if the facts are in your favor, that this was excessive force? Is that what you're getting at? Are the cases specific enough? Yeah, exactly. Exactly. Yes. Yes, Your Honors. Yes, they are. I think Matos, as a factually similar place, Matos is the closest one because of all the factors there. And I'll just quote from it briefly. There were no objective reasons to believe she was armed. She didn't verbally threaten the officers. Her only physical contact with the officer resulted from her defensively raising her hands there and here, you know, holding his sleeve briefly to prevent herself from falling down after he came into contact with her. I've obviously made a little substitution. And based on all this, the Court there found that Jayzell posed no threat to the officers, just so here. And if you're talking about the pieces of the standard itself, the standard that I just mentioned, I was quoting from Young, the substantial force without a warning against an individual suspected only of minor offenses, not resisting arrest, and doesn't pose a threat. And that's from 2011. And I think that's quite specific. It's certainly a lot more specific than the kind of cases in which the Supreme Court has said that the courts of appeals applied to higher level. You agree that the jury could find that when Sen reached out and pulled on Whitebell's arm, the jury could find that that was an assault that Smith could defend against, could find. Your Honor, a jury could certainly so find. If I were on the jury, I wouldn't say so, but a jury could. Your Honor, I don't think you would make the jury. That's right, Your Honor. I don't think I would. Usually. By the way, I want to note for the record, when I looked at Mr. Macaria, I thought, you know, he looks an awful lot like my former clerk. It turns out this is my former clerk, but the last time I saw him, he was in San Francisco. So I apologize. I thought you might have a twin brother or something, but I want the court to know and others that my relationship with Mr. Macaria as a former clerk will not affect my vote in this case. I trust you agree with that, but I do apologize. I thought he looks an awful lot like my former clerk, but you really do. No twin brother, Your Honor. There's only one of me. I guess one final point, because I think my friend on the other side said that there has to be just one case that encompasses all of the factors for qualified immunity. That's not so. This Court explained in Isaeva that even without one case directly on point, the cases are clear as to each specific factor. And the Supreme Court has said this, too. What a plaintiff needs is a body of relevant case law. So if there are no further questions, then for all the foregoing reasons, this Court should affirm the district court's order denying summary judgment to Deputy Smith. Any questions by my colleague? No further questions. Thank you, Your Honor. Thank you very much for your argument. All right. Mr. Jones, you have a little time in rebuttal. Thank you, Your Honors. Just in response, taking the facts in the light most favorable to the non-moving party is accurate, but it has to be done through the perspective of a reasonable officer in context. And I know I keep saying this, but I read the Court's Schaffer case, which came after this, but it did discuss a challenging environment is something to consider. So even when cases are similar on the particular type of force, the context in which that force is used is important in a crowd control scenario. It's not justifying general force. It's simply recognizing the difficulty that a reasonable officer has in discerning things in a fray. But doesn't that highlight, though, Mr. Jones, the very problem that we're dealing with here? We've got two reasonable explanations on both sides. One can see the officer's perspective. One can see Ms. Sen's perspective. But that's not how you resolve those at the summary judgment stage, right? At least on the first prong. And then the Court looks to, all right, was it an incompetent mistake to assume this on the part of, or would a reasonable officer be incompetent in assuming this? And I would also point out on the Matos case that the Court discussed, context matters in that case. If I recall correctly, and the Court will certainly read it, that was four officers present for two adults. That was the reported victim of a domestic violence case. And as I read the case, there was a gap in time between the defensive contact and when the officer, who was the person touched here, used the taser. As the facts of that case go, there was the defensive touching, which to Judge Graber's point, the officer then stepped back, said, are you touching an officer? And at the moment the officer made the decision to tase on the plaintiff's facts, she was in the middle of telling the other officers, can we just go outside, please? So I would say that is factually distinct from the scenario here where you're in a challenging environment. I know I keep saying it. I apologize for doing so. But that's my answer. I understand the Court's dilemma. But even with that, I think the clearly established prong of qualified immunity protects my client. And for that reason, I would ask the Court to remand with directions to enter summary judgment. Very well. Other questions by either of my colleagues? No, thank you. Very well. We thank both counsel for your argument. The case disargued, Senn v. Smith, is submitted. And this Court stands adjourned for the day. All rise. The Court for today stands adjourned. Thank you.
judges: GRABER, BEA, SMITH